UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Donnie Ray Shannon,   Civil No. 11-3262 (JRT/FLN)

             Plaintiff,

v.   **REPORT AND RECOMMENDATION**

Tom Roy and Jeff Peterson,

             Defendants.

_____

Donnie Ray Shannon, Plaintiff *Pro Se*.
Angela Behrens for Defendants.

_____

**THIS MATTER** is before the undersigned United States Magistrate Judge on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Plaintiff's motion be **DENIED**.

          **I. BACKGROUND**

Plaintiff Donnie Ray Shannon ("Shannon") is currently serving a 198-month prison sentence for third-degree murder. (Peterson Aff. ¶ 7, Ex. 4., ECF No. 21.) Shannon's sentence expires in February 2013. *Id.*

In Minnesota, the Department of Corrections (DOC) must generally release an offender who has served a term of imprisonment equal to two-thirds of his sentence. Minn. Stat. §§ 244.05, subd. 1b; 244.05.101, subd. 1 (2010). The date on which an offender completes his term of imprisonment is known as a supervised release date. (Peterson Aff. ¶ 2.) The DOC may extend an offender's supervised release date as a disciplinary sanction for misconduct that occurs

while the offender is incarcerated. Minn. Stat. § 244.05, subd. 1b (2010). When an offender is released, he serves the remainder of his sentence on either standard supervised release or intensive supervised release (ISR). Minn. Stat. § 244.05, subd. 6 (2010). ISR is a higher level of supervision than standard supervised release, and includes, among other conditions, house arrest, curfews, and frequent contact with supervising agents. *Id.* DOC policy requires that some offenders be automatically placed on ISR, while some offenders are considered discretionary ISR placements, based on the offender's offense and his behavior while incarcerated. (Peterson Aff. ¶ 3., Ex. 2.) Mandatory ISR offenders include offenders convicted of murder who failed to complete treatment directives. *Id.* Discretionary ISR offenders include all offenders convicted of murder. *Id.*

Shannon's supervised release date was extended as a result of disciplinary violations while incarcerated, including attempted homicide, assaulting other inmates and staff, disorderly conduct, and drug possession. (Peterson Aff. ¶ 8, Ex. 7.) Shannon was released from prison and placed on ISR on May 12, 2010. (*Id.* at ¶ 8, Ex. 6.) Shannon fell within the criteria for a mandatory ISR placement because he was convicted of murder and failed to participate in chemical dependency treatment as directed y DOC staff. (Peterson Aff. ¶ 8.) Since his original release on ISR, Shannon has returned to prison multiple times following revocation of his supervised release for violating his conditions of release. (*Id.* at ¶¶ 10, 17, Ex. 8, 14.) Each time Shannon has been re-released, he has once again been placed on ISR, subject to the same conditions as his original release, with the added condition that he obtain his agent's permission before contacting Sherrie Williams. (*Id.* at ¶ 14-15, Ex. 11-12.) Most recently, Shannon was re-incarcerated on March 12, 2012 following charges of fifth-degree assault and giving false

2

information to a police officer, leading to the revocation of his supervised release. (Behrens Aff. at ¶ 2, ECF No. 33.)

Shannon brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that placing him on ISR, rather than the less restrictive standard supervised release, is unconstitutional. Shannon now moves for a temporary restraining order and preliminary injunction to require the DOC to place him on standard supervised release during the pendency of this lawsuit. (ECF No. 4.)

## II. CONCLUSIONS OF LAW

The Eighth Circuit Court of Appeals has established the standard for the issuance of preliminary injunctions and temporary restraining orders. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). In evaluating a request for preliminary injunctive relief, a court must consider: (1) the threat of irreparable harm to the movant; (2) the harm to be suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted; (3) the public interest; and (4) the probability that the moving party will succeed on the merits. *Id.* at 113; *see Sain v. Geske*, No. 07-4203, 2007 WL 3051424 at * 1 (D. Minn. Oct. 16, 2007). "The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability [of success on the merits] test." *Dataphase*, 605 F.2d at 113. The moving party "faces a heavy burden of demonstrating that he is likely to prevail on the merits" if the probable harm to the opposing party outweighs the chance of irreparable injury to the movant should relief be denied. *Id.* Conversely, "where the balance of other factors tips decidedly toward" the movant, "a preliminary injunction may issue if [the] movant has raised questions so serious and difficult as to call for more deliberate investigation." *Id.*

### A. Likelihood of Plaintiff's Success on the Merits

Shannon alleges that his placement on ISR, rather than standard supervised release, violates his rights under the Fifth and Fourteenth Amendments. He asserts a double-jeopardy claim, arguing that because he has already served two thirds of his sentence in prison, his placement on ISR constitutes a "new sentence" and an "additional punishment." (Compl. at 2, ECF No. 1; Pl.'s Mem. Supp. TRO and Prelim. Inj. at 1, ECF No. 5.) Additionally, Shannon argues that his placement on ISR violates separation of powers, because it constitutes a new sentence imposed by the executive, rather than the judicial branch. (Compl. at 2.) Finally, Shannon argues that the restrictive conditions of ISR, including house arrest and curfews, violate his right to due process. *Id.* Shannon is not likely to succeed on any of his claims.

The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." This clause prohibits multiple punishments for the same offense. *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8th Cir. 2010). Shannon argues that his placement on ISR constitutes "a second punishment which imposes a second sentence disregarding the two thirds of the sentence that the plaintiff has already served in accordance to the plea agreement rendered by the Judicial Officer at sentencing." (Compl. at 2.) However, under Minnesota law, Shannon's placement on supervised release is part of his original sentence, not a second additional sentence.

Minnesota law defines an "executed sentence" to consist of two parts: "(1) a specified minimum term of imprisonment that is equal to two-thirds of the executed sentence; and (2) a specified maximum supervised release term that is equal to one-third of the executed sentence." Minn. Stat. § 244.101, subd. 1 (2010). The legislature also specifically provided that "the commissioner may order that an inmate be placed on intensive supervised release for all or part of the inmate's supervised release or parole term." Minn. Stat. § 244.05, subd. 6(a) (2010).

House arrest and daily curfews are specifically listed as appropriate conditions of release. Minn. Stat. § 244.05, subd. 6(b) (2010). Shannon's placement on ISR is a part of his criminal sentence, not an additional punishment. Shannon's placement on ISR does not violate the double-jeopardy clause of the Fifth Amendment.

Shannon's argument that his placement on ISR violates the separation of powers is also premised on his theory that his placement on ISR constitutes an additional sentence or additional punishment. Shannon argues that the conditions of ISR are "so intensive that they create another Sentence & Punishment in addition to the Sentence/Punishment that plaintiff has already served." (Compl. at 2.) Shannon argues that a new sentence can only be imposed by the judicial branch, and therefore the DOC lacked the power to impose these conditions. As explained above, a term of supervised release is part of Shannon's original sentence imposed by the district court. Minn. Stat. §§ 244.05, 244.101 (2010). The Minnesota legislature has explicitly delegated authority over the conditions of supervised release, including the determination of whether to place an inmate on ISR, to the DOC. Minn. Stat. § 244.05, subd. 6(a) (2010); *see also State v. Kachina*, 744 N.W.2d 407, 408-09 (Minn. Ct. App. 2008) (holding that Department of Corrections, not district court, had authority to assign offender to intensive supervised release). Shannon's placement on ISR is part of his court imposed sentence and a valid exercise of power by the DOC under Minnesota law. Shannon has no chance of success on his separation of powers claim.

Finally, Shannon argues that his placement on ISR violates the due process clause of the Fifth Amendment. The due process clause requires the government to provide sufficient procedures before depriving a person of a protected liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). Shannon's claim cannot succeed because

he has no protected liberty interest in being free from the restraints of ISR while on supervised release.

When a criminal defendant is convicted and sentenced, he is legally and constitutionally deprived of liberty interests enjoyed by other citizens. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7-8 (1979)(citing *Meechum v. Fano*, 427 U.S. 215, 224 (1976) ("Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.") When Shannon was released on ISR, that release did not restore to him all of the rights and freedoms of citizens who are not serving a court-imposed sentence for a criminal conviction. The Supreme Court has held that because a criminal conviction extinguishes a convicted person's liberty right, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id.* A state may choose to establish a system of supervised release, but it has no duty to do so. *Id.* The Minnesota legislature has established a system of supervised release, and has charged the DOC with setting appropriate conditions of release, including placement on ISR and imposition of house arrest and a curfew. Minn. Stat. § 244.05, subd. 6 (2010). Shannon has no liberty interest in a particular level of supervision while on supervised release, beyond that granted to him under Minnesota law. Because Shannon was placed on ISR in compliance with Minnesota law, the restrictions of ISR do not violate his right to due process.

Shannon has not demonstrated a likelihood of success on the merits on any of his claims, nor has he "raised questions so serious and difficult as to call for more deliberate investigation." *See Dataphase Sys., Inc.*, 640 F.2d at 113.

    **B.**     **Irreparable Harm**

Shannon alleges that his continued placement on ISR will cause him irreparable harm because such placement violates his rights under the 5th and 14th Amendments, and that any deprivation of constitutional rights constitutes irreparable harm.  As described above, Shannon's placement on ISR does not violate his constitutional rights, therefore Shannon will not suffer irreparable harm if a preliminary injunction is not granted.  This factor weighs in favor of Defendants.

### C. Balance of Harms

Shannon argues that the harm to him without receiving a preliminary injunction outweighs the harm to defendants of granting an injunction.  Shannon argues that he faces continued violation of his constitutional rights, while Defendants only have to make a few phone calls, a minimal burden.  Defendants argue that allowing an offender to reduce his level of supervision simply by filing a lawsuit would disrupt the DOC's ability to administer the supervised-release program and to determine what level of supervision is necessary to protect the public.  The Court finds that while Shannon has no constitutional right to a particular level of supervision, Defendants have a strong interest in preserving conditions they have determined to be necessary to enable effective supervision and protection of the public.  This factor weighs in favor of Defendants.

### D. Public Interest

Finally, the public interest would be adversely affected by the grant of a preliminary injunction.  The Minnesota legislature has delegated to the DOC the determination of what level of supervision is necessary to protect the public.  The DOC has determined in this case that Shannon's placement on ISR is appropriate in order to ensure public safety.  This factor weighs in favor of Defendants.

As discussed above, all four *Dataphase* factors weigh in favor of Defendants. The Court recommends that Shannon's motion for a preliminary injunction be denied.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4) be **DENIED**.

DATED: April 19, 2012.                              *s/ Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 4, 2012**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.